UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOMONIQUE MICHELLE THORNHILL,

    Plaintiff,

  v.

TRANSUNION, LLC,

    Defendant.

No. 23 CV 4352

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Domonique Michelle Thornhill filed suit against TransUnion, LLC, and invoked the Fourth Amendment to the U.S. Constitution, fraud and identity theft, genocide, unlawful use of private information, and the refusal to cease and desist upon a written order. Within those assertions, Thornhill also referred to the Fair Credit Reporting Act. Both parties move for summary judgment, focusing on Thornhill's Fair Credit Reporting Act claim. For the reasons discussed below, Thornhill's FCRA claim is dismissed for lack of jurisdiction. On all her other claims, Thornhill's motion for summary judgment is denied and TransUnion's motion is granted.

I.    **Legal Standard**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact

1

exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views "the facts and draw[s] reasonable inferences in the light most favorable to the non-moving party." *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). "When both parties move for summary judgment, we take the motions one at a time, viewing the facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was made." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023). Summary judgment is appropriate only where the "admissible evidence considered as a whole," no matter which motion the evidence is attached to, shows there is no genuine dispute of material fact. *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011); *Torry v. City of Chi.*, 932 F.3d 579, 584 (7th Cir. 2019) (citing *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered.")). I construe a pro se plaintiff's submissions liberally. *See United States v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021).

**II.    Facts**

Defendant TransUnion is a consumer reporting agency as defined by the Fair Credit Reporting Act. [77] ¶ 1.[1] Thornhill disputes that TransUnion is a consumer

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. The facts are largely taken from the parties' responses to their adversary's Local Rule 56.1 statement of facts, [73] and [77], where both the asserted fact and the opposing party's response are set forth in one document. To the extent that Thornhill refers to a statement of facts filed before the motions for summary judgment, I do not refer to those facts. [18]. Thornhill replied to Trans Union's response to

2

reporting agency, arguing that TransUnion "has not established that it properly functions as a consumer reporting agency under the Fair Credit Reporting Act in relation to the Plaintiff's case." But whether TransUnion is defined as a consumer reporting agency is a different question than whether it "properly functioned" as one.

TransUnion has procedures for recording and maintaining correspondence from consumers about their TransUnion consumer credit files. [77] ¶ 2. TransUnion says it has procedures to ensure the accuracy of the information in Thornhill's credit file. [77] ¶ 3.[2] Thornhill points out that even after multiple disputes, inaccuracies remained in her credit report. [77] ¶ 3. TransUnion asserts that it has "numerous and varied procedures and systems" to ensure that furnishers of information provide accurate information, including: (1) initial site inspections of furnishers when entering into a contractual relationship with them; (2) initial review of due diligence investigation information to make sure the furnisher is a creditworthy financial institution; (3) distribution of or ensuring access to relevant materials for furnishers; (4) trainings for furnishers; (5) audits of furnisher data before and after they are permitted to transmit information; (6) systems that alert TransUnion if there are an

---

her initial statement of facts. [80]. I refer to this filing, as it contains citations to the record in support of Thornhill's asserted facts.

Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statement of facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). The parties dispute many facts, but the facts in those disputes are not all material. To the extent disputed facts are relevant and the parties rely on admissible evidence, I include both sides' versions.

[2] TransUnion also argues that these procedures are "reasonable" to "assure the maximum possible accuracy" of the information in Thornhill's file. Thornhill disputes this. Whether TransUnion's procedures are reasonable is a legal question, not a fact.

unusual number of complaints or a higher than expected number of adverse items reported by a furnisher; (7) initial, then monthly and yearly, audits, and monitoring and accuracy checks of information provided by furnishers; and (8) suppression and removal of a furnisher's information from consumer reports when a furnisher is deemed unreliable. [77] ¶ 4; [69-1] ¶ 4.

In general, when TransUnion receives a dispute from a consumer, TransUnion investigates the dispute through either a manual or electronic system, including the use of Automated Consumer Dispute Verification forms. [77] ¶ 5. These forms are electronic communications between TransUnion and a furnisher of credit information, in response to a consumer dispute, that inform the furnishers of the basis of the consumer's dispute and allow the furnisher to respond by verifying, deleting, or updating the information reported by the furnisher. [77] ¶ 14.

Through these systems, TransUnion sends the furnisher the credit report information TransUnion is reporting, tells the furnisher what the consumer's dispute is, and asks the furnisher to determine whether the information given to TransUnion is correct and complete. [77] ¶ 6; [69-1] ¶ 6. When a furnisher responds to TransUnion, TransUnion requires it to certify the information in its response is correct, that it has verified the accuracy of the information in compliance with all legal requirements, and that records will be adjusted to reflect any changes noted. [77] ¶ 7; [69-1] ¶ 7.

Before 2023, TransUnion relied on information from the furnishers for Thornhill's credit file and had not received any notice of inaccuracies related to her accounts. [77] ¶¶ 8–9.

Between January and May 2023, TransUnion received four disputes from Thornhill. In the first dispute, Thornhill claimed that Navient accounts on her consumer file were "inaccurate debt" and "Navient has not produced any proof of existence of a debt, or any contracts owned." [77] ¶ 10; [69-1] ¶ 10. In the second dispute, Thornhill disputed three Nelnet accounts, a Navient account, and a 2016 Chapter 13 bankruptcy case in her file. [77] ¶ 16. For her third dispute, Thornhill submitted a complaint through the Consumer Financial Protection Bureau claiming that two Navient accounts were "inaccurate" and that it was "fraud to report inaccurate information." [77] ¶ 21. Thornhill also disputed several Nelnet accounts, an AES account, and the same bankruptcy case already under reinvestigation. [77] ¶ 21. TransUnion received a fourth dispute from Thornhill regarding the Nelnet and Navient accounts, as well as a TBOM/Fortiva account. [77] ¶ 26. Thornhill also requested a "signed contract" for each account. [77] ¶ 26.

For each of the disputes, TransUnion reviewed the dispute letter, initiated a reinvestigation, and informed the appropriate furnisher of Thornhill's dispute and related information and documentation that Thornhill submitted. [77] ¶¶ 11–12, 17–18, 22–23, 27–28. Navient responded to the first reinvestigation by agreeing with Thornhill that two Navient accounts were not correctly reported but confirmed the accuracy of two other accounts. [77] ¶ 13. The furnishers in the second dispute all

5

verified the accounts were accurate. [77] ¶ 19. TransUnion removed the bankruptcy from Thornhill's file in line with its internal policy. [77] ¶ 19.[3] For the third dispute, Navient and Nelnet verified that the disputed accounts belonged to Thornhill and were accurate, but the AES account was not accurately reported. [77] ¶ 24. Finally, the furnishers in the fourth dispute responded that the accounts belonged to Thornhill and were reported accurately. [77] ¶ 29. TransUnion sent the results of each of its reinvestigations to Thornhill. [77] ¶¶ 15, 20, 25, 30.

Thornhill objects to nearly all of TransUnion's asserted facts on the grounds that TransUnion has not provided sufficient evidence to support each fact. In response to TransUnion's facts that describe its procedures for maintaining accurate information and investigating disputes, Thornhill argues that TransUnion's procedures in this case were not reasonable and did not adequately address her disputes or rectify the inaccuracies in her credit report. These arguments are not about the asserted facts—to which Thornhill points to no evidence to contradict—but about inferences and conclusions that may be drawn from the facts.

Each of TransUnion's facts is supported by an affidavit based on the personal knowledge of a TransUnion employee, documentation of each dispute, Automated Consumer Dispute Verification Forms, and the documented results of each reinvestigation sent to Thornhill. *See* [69-2]. At least one of Thornhill's submissions also supports TransUnion's facts. *See, e.g.*, [79] at 23. The evidence in the record is

---

[3] Thornhill disputes this but provides no evidence to suggest that the bankruptcy is still included in her credit file. [77] ¶ 24.

sufficient to support the asserted facts. *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022) ("A nonmoving party's own affidavit can indeed be a legitimate method of introducing facts on summary judgment.").

Thornhill filed an amended complaint alleging that TransUnion violated the Fourth Amendment to the U.S. Constitution, committed fraud and identity theft against Thornhill, committed genocide against the original peoples of the Americas, and has unlawfully used private information. [7] at 4; [77] ¶¶ 33–36.[4] Thornhill seeks $986,000 in damages and an order for TransUnion to cease and desist from all unlawful use of personal property. [77] ¶ 37. The parties have treated the complaint as including a claim under the Fair Credit Reporting Act.

### III. Analysis

#### A. Standing

"Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). "The Article III standing inquiry remains open to review at all stages of the litigation." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1189 (7th Cir. 2021) (quoting *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021)). At the summary judgment stage, a plaintiff must "set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be

---

[4] Thornhill disputes the "characterization" of her genocide and unlawful use of private information claims, but TransUnion accurately describes the claims as alleged in Thornhill's amended complaint. *See* [7] at 4.

taken to be true." *Id.* at 1189–90 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Standing requires injury in fact, causation, and redressability. *Id.* at 1190. Injury in fact is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). A concrete injury is one that is "real, and not abstract," and can include physical or monetary harms and also intangible harms such as the disclosure of private information. *Id.* A violation of a law is not injury in fact; the plaintiff must be concretely harmed by the statutory violation to have standing to sue. *Id.*

Thornhill alleges that TransUnion violated the Fair Credit Reporting Act by failing to correct inaccuracies and continuing to report erroneous information in her credit report. She claims that TransUnion's failure to correct these inaccuracies has caused her significant emotional distress, harm to her creditworthiness, and financial damage. [82] at 2–4. Although these allegations were sufficient at earlier stages of the proceedings, Thornhill, at the summary judgment stage, must put forth evidence of specific facts that support that she was harmed. *Persinger*, 20 F.4th at 1189–90. She has not done so.

Thornhill claims damages for $986,000 but provides no evidence to show how she has arrived at that number. She claims that she "has experienced adverse financial consequences as a result of TransUnion's inaccurate reporting, which has affected her ability to secure credit," but admits she "continues to investigate and gather supporting documentation." [77] ¶ 43. She has not put forth any evidence that TransUnion disclosed an inaccurate report to a third party. *TransUnion LLC v.*

8

*Ramirez*, 594 U.S. 413, 417 (2021) (class members whose credit reports were provided to third parties had standing, while class members whose internal credit files were not shared did not have standing); *see also Crabtree v. Experian Info. Sols.*, 948 F.3d 872, 879–880 (7th Cir. 2020) (recognizing that unauthorized disclosure may violate a common law right to privacy and constitute injury in fact for Article III standing). She has not put forth any documentation that she was denied credit or experienced any other adverse credit action related to TransUnion's reporting. *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005). She did not show any loss of credit, housing, employment, money, or insurance. *Persinger*, 20 F.4th at 1194. The conclusory statement that Thornhill has experienced adverse financial consequences is unsupported by any evidence in the record. She has not shown concrete injury based on financial harm, violation of her right to privacy, or other tangible or intangible harm.

In support for her claim for emotional distress, Thornhill says she "will provide testimony and supporting documents at the appropriate stage of the proceedings." [77] ¶ 44. This is that stage. *See Ellison*, 84 F.4th at 759 (summary judgment is the moment in a lawsuit when a party must reveal what evidence it has to convince a jury). Emotional harm may be sufficient to confer standing, but conclusory statements that plaintiff has suffered emotional distress is not enough. *Persinger*, 20 F.4th at 1194. There is a "strict standard for a finding of emotional damage because they are so easy to manufacture." *Ruffin-Thompkins*, 422 F.3d at 609 (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004)). "[W]hen the injured party's

9

own testimony is the only proof of emotional damages, [s]he must explain the circumstances of [her] injury in reasonable detail; [s]he cannot rely on mere conclusory statements." *Id.* (quoting *Sarver*, 390 F.3d at 971). Thornhill relies only on her own conclusory statements and notes herself that she has not put forward testimony and supporting documents to support her claim of emotional distress. This is insufficient to show injury in fact.

Because Thornhill has presented no evidence of a concrete injury, she lacks standing to sue TransUnion for any FCRA violation, and I lack jurisdiction to consider the FCRA claim.

**B. Merits**

*1. FCRA*

In the interests of completeness given the parties' briefing, if Thornhill's general assertion that she suffered adverse financial consequences and emotional distress were enough to confer jurisdiction in federal court, her FCRA claims would fail as a matter of law.[5]

The Fair Credit Reporting Act was enacted "to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Frazier v. Equifax Info. Servs., LLC*, 112 F.4th 451, 455 (7th Cir. 2024) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). The FCRA prohibits consumer reporting agencies from furnishing a "consumer report" except for when there is a

---

[5] If a court does not have jurisdiction, it should not address the merits. *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017). But because the parties briefed the merits and Thornhill is without counsel, a discussion of the merits seems useful to the litigants here.

10

permissible purpose as defined in the Act. 15 U.S.C. § 1681b(a); *Persinger*, 20 F.4th at 1195. One of the "cornerstones" of the Act is § 1681e, which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e; *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023). Accuracy means both truth *and* completeness; a misleading or materially incomplete report is inaccurate. *Id.* The FCRA does not require "unfailing accuracy" from consumer reporting agencies; it instead requires "reasonable procedures" to ensure accuracy when preparing a report. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020).

If a consumer believes her report is inaccurate or incomplete, she can dispute the report with the consumer reporting agency. *Chaitoff*, 79 F.4th at 809. The consumer reporting agency is then required to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate," 15 U.S.C. § 1681i(a)(1)(A), considering "all relevant information submitted by the consumer." 15 U.S.C. § 1681i(a)(4); *Chaitoff*, 79 F.4th at 809. The Act provides a private right of action for injured consumers; negligent violations are actionable under § 1681o and willful violations carry additional penalties and are actionable under § 1681n. *Frazier*, 112 F.4th at 455; *Chaitoff*, 79 F.4th at 809.

Thornhill claims that TransUnion failed to maintain accurate records and failed to conduct a reasonable reinvestigation of her disputes, violations of 15 U.S.C. §§ 1681e(b) and 1681i(a)(1)(A). Liability under both these sections "depends on

11

inaccurate information—if the credit report is accurate, [Thornhill] has suffered no damages." *Frazier*, 112 F.4th at 455 (quoting *Chaitoff*, 79 F.4th at 811). Thornhill also must show that the report was prepared and sent to a third party—TransUnion "cannot be held liable for a report it neither prepared nor sent." *Id.* at 457. Finally, for a FCRA claim on a theory of negligence to survive, Thornhill must show damages caused by TransUnion's violation of the FCRA. *Persinger*, 20 F.4th at 1194.

Thornhill fails to provide evidence for any of these necessary elements. First, Thornhill has not shown any evidence that the credit report contains inaccurate information. Thornhill "offers no evidence showing that [the furnishers'] account of her payment history or the amounts owed is inaccurate. Her unsupported assertions are not sufficient to contradict the evidence in the record." *Walton v. BMO Harris Bank N.A.*, 761 Fed. App'x 589, 591 (7th Cir. 2019) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010)).

Thornhill has also failed to show that TransUnion disclosed her consumer report to any third party. *Frazier*, 112 F.4th at 457. Without disclosure to a third party, "there cannot be a consumer report" and "[w]ithout such a report, there could be no duty to follow reasonable procedures regarding the report, nor could damages flow from a breach of that duty." *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), *abrogated on other grounds by Safeco*, 551 U.S. at 56. Without any evidence that TransUnion sent her consumer report to a third party, Thornhill cannot show that TransUnion has violated either provision of the FCRA.

Finally, for the same reason that Thornhill lacks standing, she has failed to show any damages from TransUnion's alleged violation of the FCRA. "The FCRA does not presume damages; instead…the consumer must affirmatively prove that she is entitled to damages." *Ruffin-Thompkins*, 42 F.3d at 610. "Actual damages require a causal relation between the statutory violation and the harm suffered by the plaintiff. *Persinger*, 20 F.4th at 1194. Without this causal relation, a plaintiff cannot obtain an award of actual damages. *Ruffin-Thompkins*, 42 F.3d at 608 (quoting *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)). However, as explained above, Thornhill cannot prove any actual damages caused by any FCRA violation, because she has not shown that she suffered any harm.

Even if a plaintiff cannot prove actual damages, she may still recover statutory damages by proving TransUnion willfully violated the FCRA. *Persinger*, 20 F.4th at 1194–95. For statutory damages for a willful violation of the Act under § 1681n, a plaintiff must show that TransUnion acted in reckless disregard of the FCRA's requirements by "[running] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. Thornhill has not shown that TransUnion violated the FCRA; she has not come forward with evidence that TransUnion violated any provision of the FCRA. "Because [Thornhill's] claim under the FCRA cannot survive, it follows…that the Court must deny her claim for punitive or statutory damages." *Ruffin-Thompkins*, 42 F.3d at 610.

Thornhill argues that TransUnion has failed to produce evidence, including "capitalized expenses" reports and other "relevant documents" despite her multiple

13

requests. [66] at 2. She contends this failure to produce essential documentation "demonstrates that lack of factual basis for any claims against the plaintiff." [66] at 2. Relatedly, she argues that TransUnion lacks "standing, status, and capacity to enforce any claims" against her. [66] at 2–3. Thornhill also argues that TransUnion has "continuously harassed the plaintiff," including "repeated, unjustified communications and actions that have adversely affected" her well-being. [66] at 2. Thornhill contends her claim for $986,000 "reflects the financial impact, emotional distress, and other damages incurred due to the Defendant's unlawful conduct." [66] at 3. Thornhill also claims she is entitled to equitable relief. [66] at 3–4.

These arguments do not respond to issues raised by the theories in the complaint and are unrelated to the merits of her FCRA claims. TransUnion, as a defendant, does not need to show standing and is not enforcing any claims against Thornhill, either in this court or elsewhere. It is not clear how TransUnion is harassing Thornhill, as Thornhill provides no evidence of this alleged harassment. As best as I can tell, Thornhill's dispute is really with the creditors who she says are not reporting her debt accurately, and are perhaps seeking repayment, not with TransUnion. At the very least, what Thornhill claims TransUnion has done is not a violation of the FCRA.

### 2. Other claims

Thornhill has also put forth several other counts in her complaint. She alleges that TransUnion violated her Fourth Amendment rights, committed fraud and

14

identity theft, committed genocide against the original peoples of America, unlawfully used private information, and refused to cease and desist upon a written order.

Genocide is a criminal statute that Thornhill has no authority to enforce. 18 U.S.C. § 1092 (nothing in the federal genocide statute "create[s] any substantive or procedural right enforceable by law by any party in any proceeding."). Similarly, there is no private cause of action for any federal identity theft offense. 18 U.S.C. §§ 1028, 1028a; *see also Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004); *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998).

In terms of her Fourth Amendment claim, Thornhill has put forth no evidence explaining how TransUnion allegedly violated that right or showing that TransUnion was an "instrument or agent" of the government, which is necessary to hold TransUnion accountable for violating a constitutional right. *See United States v. Hudson*, 86 F.4th 806, 810–11 (7th Cir. 2023) (The Fourth Amendment "does not apply to searches or seizures conducted by private individuals, no matter how unreasonable," unless the individual acts as an "instrument or agent" of the government.). As for any fraud claim, Thornhill has failed to come forward with any evidence of how TransUnion defrauded her, and as noted, has failed to show any harm resulting from any false statements allegedly made by TransUnion. *See Ash v. PSP Distrib., LLC*, 2023 Ill. App. 220151, ¶ 22 (1st Dist. 2023) (common law fraud requires damages to the plaintiff).

Thornhill has failed to put forward any evidence or make any arguments whatsoever in support of the other claims in her complaint. TransUnion's motion for

summary judgment on these other claims is granted and Thornhill's motion for summary judgment is denied.

## IV. Conclusion

Thornhill's FCRA claim is dismissed without prejudice for lack of jurisdiction. Defendant's motion for summary judgment, [68], is granted for all other claims. Plaintiff's motion for summary judgment, [67], is denied. Enter judgment and terminate civil case.

ENTER:

                                                     Manish S. Shah
                                                     United States District Judge

Date: February 24, 2025